# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Case No. 17-CV-2118-JLK-GPG

RANDI LATHAM,
CHERYL SOUCY, and
MISTY WALKER,

      Plaintiffs,

v.

HIGH MESA COMMUNICATIONS,
HIGH MESA COMMUNICATIONS, LLC,
ROBERT FISHERING and
DAVID FISHERING,

      Defendants.

---

## REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendants' motion for summary judgment (D. 52)[1], Plaintiffs'

response (D. 63), and Defendants' reply (D. 66).  The motion has been referred to this Magistrate

Judge for recommendation.  (D. 64).[2]  The Court has reviewed the pending motion, response,

---

[1] "(D. 52)" is an example of the stylistic convention used to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Report and Recommendation.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  FED. R. CIV. P. 72(b).  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the

reply, and all attachments.  The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the premises.  Oral argument is not necessary.  For the reasons that follow, the Court respectfully recommends that the District Court GRANT IN PART AND DENY IN PART the Defendants' motion for summary judgment.

Plaintiffs' complaint asserts two causes of action, namely violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA), and violations of the Colorado Wage Act, Colo. Rev. Stat. § 8-6-101, *et seq.* (CWA).  Defendants move for summary judgment arguing, in part, that (1) Plaintiffs were not entitled to overtime as required under the FLSA and CWA, and (2) the Plaintiffs were provided meal and rest periods, did not have an agreement regarding payout of vacation after termination or resignation, were provided proper commission compensation, and failed to make a proper wage demand under the CWA.  (D. 52, pp. 16, 21-22, 26, 29, 38).  Plaintiffs oppose, asserting that there are genuine issues of material fact on these issues, but concede that (1) they were each properly compensated for meal breaks and (2) Plaintiff Walker did not make a wage demand and is thus not entitled to penalties under the CWA, but reserves the right to liquidated damages under the FLSA.  (D. 63, p. 1).

I.      JURISDICTION

Jurisdiction in this matter is conferred upon this Court pursuant to § 16(b) of the FLSA and 28 U.S.C. § 1331, and regarding the CWA claim, pursuant to 28 U.S.C. § 1367.

---

failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

II.     STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing FED. R. CIV. P. 56(c)).  A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Farthing*, 39 F.3d at 1134.  A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.  *Anderson*, 477 U.S. at 248; *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).

The moving party has the burden to show the absence of a genuine factual dispute. *Concrete Works, Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 514 U.S. 1004 (1995).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1190 (citing *Anderson*, 477 U.S. at 248).

Conclusory statements, unsupported allegations, and testimony based merely on conjecture or subjective belief are insufficient evidence to support summary judgment.  *Rice v. United States*,

166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 528 U.S. 933 (1999); *Nutting v. RAM Southwest, Inc.*, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000). But evidence need not be submitted in the form that would be admissible at trial, as long as the "content or substance of the evidence" is admissible. *Argo v. Blue Cross and Blue Shield of Kansas, Inc.,* 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 485 (10th Cir. 1995)).

Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper because there is a "genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the nonmoving party who is opposing the motion for summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). And all doubts "must be resolved in favor of the existence of triable issues of fact," thereby favoring the right to a trial. *Rivendell Forest Prod., Ltd. v. Georgia-Pac. Corp.*, 28 F.3d 1042, 1045 (10th Cir. 1994) (citing *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991) and *Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 889 (10th Cir. 1991)).

III.   FACTS

The Court briefly summarizes the pertinent facts here and will elaborate as necessary in the analysis. While the parties disagree as to many facts, the basic framework of this case is largely undisputed. Defendant High Mesa, LLC, is an AT&T authorized retailer as well as a retailer for mobile phones, DirecTV, and mobile phone accessories on the Western Slope with stores in Montrose, Gunnison, and Delta. (D. 52-2, pp. 6-8). Defendants David Fishering (David) and Robert Fishering (Robert) are co-owners of the business. Robert is president and owns seventy

percent and David is vice-president and owns thirty percent.  (*Id.*, p. 5).  It is undisputed that the sales employees reported to the store managers, who in turn reported to David; and David reported to Robert.  (D. 52-1, p. 6).  The three Plaintiffs are all former employees—with varied duties and levels of responsibility—who seek recovery of unpaid overtime compensation, and other penalties under the FLSA, as well as recovery of unpaid overtime wages, commissions, vacation pay, and rest periods under the CWA.  (D. 1, p. 8).  Cheryl Soucy was an employee at High Mesa from 2001 to April 2016.  (D. 63-3, pp. 16-17).  Randi Latham was an employee at High Mesa from September 2015 to April 2017.  (D. 63-5, p. 12).  Misty Walker was an employee at High Mesa from June 2015 to September 2017.  (D. 63-1, p. 7).

Plaintiffs, except for Soucy, were paid on an hourly basis and were required to complete timesheets.  (D. 63-3, p. 18; D. 63-1, pp. 38-39; D. 63-5, p. 15, 39).  Plaintiffs were also paid a commission based on their sales of mobile phones, accessories, and DirecTV subscriptions.  (D. 63-1, pp. 7-8; 63-3, p. 18; 63-5, p. 24).  However, when a sale or transaction was canceled, Defendants would "reconcile" the difference by noting a "chargeback" for the employee's commission.  (D. 63-7, pp. 23-25, 30).  This chargeback time period was 180 days.  (D. 63-7, p. 3).  Initially, this policy was not disclosed to the Plaintiffs, except to Soucy, who assisted the Defendants in calculating the chargeback amounts.  (*Id.*, pp. 17-18).

Moreover, in 2016, Defendants changed the commission structure, informing employees that failure to sell one DirecTV subscription for two consecutive months would result in a twenty percent reduction of their total commission.  (D. 63-10, pp. 5-6).  In either 2016 or 2017, lacking comprehensive documentation regarding work policies, Defendants issued a handbook informing employees, among other things, that paid time off would not exceed 80 hours at the completion of their first year of employment, did not accrue, and carried no monetary value.  (D. 63-1, pp. 34-

35; 63-7, pp. 14-15; 63-8, pp. 15-20).  Plaintiffs Soucy and Latham were not employees at High Mesa when the handbook was distributed to High Mesa employees.  (D. 63-3, pp. 34, 60; 63-5, pp. 28-29, 77).

Robert confirmed that multiple store managers had some operations control over various store locations.  (D. 63-7, pp. 8-9).  Latham managed the Delta location alone, but David was responsible for scheduling and staffing.  (D. 63-5, p. 24, 26; 63-3, p. 45).  Soucy, a store manager at the Montrose location, had the authority to schedule employees to come into work, send them home, and recommend when employees should get a commission.  (D. 63-7, pp. 12-13).  Soucy made three recommendations for employee terminations, but two of those recommendations were not followed by Robert and David.  (*Id.*, pp. 13-14).  Soucy made recommendations regarding employee pay from 2015 to 2017, but none of those recommendations were followed.  (D. 63-8, p. 10).

IV.    ANALYSIS

A.    Alleged Violation of the FLSA

The Court begins with the FLSA claim because, if Defendants are correct and the Plaintiffs are FLSA-exempt, the Court does not need to proceed further.  Generally, unless the employee is exempt, the FLSA requires "an employer to pay its employees at a rate of one and one-half times their regular rate of pay for any time worked in excess of forty hours in a given workweek." *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1228 (10th Cir. 2008).[3]

---

[3] Defendants did not argue that the Plaintiffs were exempt under the CWA. *See* 7 Colo. Code Regs. § 1103-1:5.  Accordingly, this Court will not address such exemption in Part B.

1.   Plaintiff Soucy (Executive and Administrative Exemptions)

The FLSA exempts from its overtime coverage "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).  Department of Labor regulations define the "executive" exemption as an employee who is:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . .;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

*Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1187 (10th Cir. 2015) (quoting 29 C.F.R. § 541.100(a)).  However, this exemption is interpreted narrowly against employers.  *Id.* at 1188. Here, it is uncontested that Soucy was compensated at a rate not less than $455 per week and that she regularly directed the work of two or more employees.  But the record also indicates that the Defendants did not give Soucy's recommendation to hire or fire other employees any particular weight.  During deposition, it was noted that the Fisherings only consulted with Soucy as they would any other employee:

> Q. So personnel management with respect to staffing.  What about personnel management with respect to hiring?
> A. Only as I mentioned earlier this morning, we would if she knew the person or had interacted with them in any way, we would ask her opinion on that individual, because she knew a lot of people.
> Q. Just like you would with any other person?
> A. Yeah.
> Q. An employee?
> A. Uh-huh.
> Q. Yes? Is that a yes?
> A. Yes, that's a yes.

(D. 63-8, p. 39).

Moreover, determining which duty is a "primary duty" is a question of fact, and summary judgment is only proper if there is no genuine dispute regarding the plaintiff's primary duties. *See Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 828 (10th Cir. 2012). "The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee." 29 C.F.R. § 541.700. Here, David noted that Soucy spent seventy percent of her time performing sales duties and thirty percent performing managerial duties. (D. 63-8, p. 11). But there is no requirement that an exempt employee must spend over half her time on managerial tasks. *Maestas*, 664 F.3d at 827. The record indicates that Robert and David made many of the managerial decisions regarding High Mesa, LLC, while Soucy had the ability to make smaller day-to-day decisions within the Montrose store and Latham managed the Delta store. (D. 63-8, pp. 6-12). The parties clearly dispute which of Soucy's duties are primary under the FLSA. This dispute is a question of fact, which precludes summary judgment. *Maestas*, 664 F.3d at 828.

Likewise, the Plaintiffs argue that Soucy is also exempt from FLSA coverage under the administrative exemption. Department of Labor regulations define the "administrative" exemption as an employee who is:

> (1) Compensated ... at a rate of not less than $455 per week . .. ;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). Administrative duties include work in areas like: "tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R.

§ 541.201(b).   A court will examine whether an employee has exercised discretion and independent judgment by examining factors such as:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).   Determining what an employee's primary duties are and whether the employee is covered by the administrative exemption is a fact-intensive inquiry and the Defendants bear the "burden of producing evidence that 'plainly and unmistakably' shows that its position is correct . . . any gaps in the evidence work in plaintiffs' favor." *Maestas*, 664 F.3d at 829.   Here, David stated in his deposition that while Soucy trained new employees and ordered new inventory through AT&T, she did not have any responsibilities carrying out tasks related to, among other things: finance, accounting (other than reconciliations), budgeting, auditing, insurance, quality control, business operation purchases, advertising, marketing, research, government relations, employee benefits, or legal and regulatory compliance.   (D. 63-8, pp. 38-40).   It is debatable whether a rational factfinder could rely on these facts to conclude that Soucy is exempt under the administrative exemption and, thus, summary judgment is improper.   Thus, taking the evidence in light most favorable to the Plaintiffs, the Court finds that there is a genuine dispute of fact as to whether Plaintiff Soucy is exempt under the executive and administrative exemptions and summary judgment is not appropriate.

2.   Plaintiffs Soucy, Latham, and Walker (Commissioned Employee Exemption)

Under 29 U.S.C. § 207(i), an employer does not violate the FLSA if (1) "Plaintiffs received a regular pay rate exceeding one and one-half times the minimum wage," (2) "Defendant[s are] a retail or service establishment," and (3) "Plaintiffs received more than half of their compensation from commissions during the representative period." *Carpenter v. DIRECTV, LLC*, No. 14-CV-02854-MJW, 2017 WL 4225797, at *6 (D. Colo. May 16, 2017) (citing *Charlot v. Ecolab, Inc.*, 136 F. Supp. 3d 433, 452 (E.D.N.Y. 2015)).  Plaintiffs argue that Defendants are not entitled to summary judgment because they have not demonstrated that (1) they are a retail or service establishment and (2) Plaintiffs' commissions were less than half their pay in certain months.  (D. 63, p. 31, 34).  Defendants argue in their Reply that the retail stores in Montrose and Delta are a separate establishment from their other business unit that is an integrator for enterprise phone systems and networking.  (D. 63-9, p. 4; D. 66, pp. 44-45).

Pursuant to the FLSA, a retail or service establishment is one where "75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry."  29 C.F.R. § 779.24; 29 C.F.R. § 779.411.  However, in a multiunit operation, portions may qualify for exemption, while others may not.  "For example, a manufacturer may operate a plant for production of its goods, a separate warehouse for storage and distribution, and several stores from which its products are sold. Each such physically separate place of business is a separate establishment."  29 C.F.R. § 779.303.  David stated during deposition:

> A. Yes. So if you wanted to think of it as having two business units. High Mesa Communications has the AT&T authorized retail business unit, which is what you're talking about, and then the other part of the business is what Greg pretty much does on his -- you know, by himself, which is enterprise phone systems and networking for businesses.

(D. 63-8, p. 6).   Defendants' arguments in their Reply are unavailing for two reasons.   First, Defendants have failed to identify the company's gross sales profits for the years in question.   (*See generally* D. 63-7, pp. 5-6).   Second, according to the record, it appears that the Defendants operated both the retail portion and the enterprise phone system portion out of the same building:

> Q. Do you have the retail and the enterprise phone systems operating out of all three stores, or just the Montrose store?
> A. No, just the Montrose store.

(D. 63-7, p. 8).   And despite Defendants' argument that two separate establishments may operate under one roof, the Court still cannot come to such a conclusion without further facts.   Under 29 C.F.R. § 779.305:

> For retailing and other functionally unrelated activities performed on the same premises to be considered as performed in separate establishments, a distinct physical place of business engaged in each category of activities must be identifiable. The retail portion of the business must be distinct and separate from and unrelated to that portion of the business devoted to other activities.

In order for this Court to rule that the Montrose and Delta stores were separate retail and service establishments, the Defendants would have needed to provide facts demonstrating that their other establishment (1) was "physically separated from the other activities"; (2) was "functionally operated as a separate unit having separate records, and separate bookkeeping"; and (3) had "no interchange of employees between the units."  29 C.F.R. § 779.305.   Because there is no clear test to determine whether an establishment qualifies as a retail or service establishment, "a case-by-case approach that considers all circumstances relevant to the business at issue is necessary in making this determination." *Charlot*, 136 F. Supp. 3d at 458.

Here, David identified during the deposition that High Mesa utilized contractors for the enterprise phone systems and business networking establishment.   (D. 63-8, p. 6).  But Defendants failed to provide this Court with information regarding (among other things) the location of this

establishment within the Montrose store and whether its records and bookkeeping overlapped with the AT&T retail establishment.  "[I]f the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden." *Haskins v. VIP Wireless LLC 300*, No. CIV.A. 09-754, 2010 WL 3938255, at *4 (W.D. Pa. Oct. 5, 2010) (quoting *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3d Cir. 1991)); *see also Carpenter*, No. 14-CV-02854-MJW, 2017 WL 4225797, at *6 ("Defendant bears the burden of proving the exemption by a preponderance of evidence.").

Because Defendants have not satisfied the burden proving that they are a retail or service establishment, the Court will not analyze whether the Defendants satisfy the third element from *Carpenter*, that is, proving that more than half of Plaintiffs' compensation came from commissions during the representative period.[4]  Thus, taking the evidence in light most favorable to the Plaintiffs, the Court finds that there is a genuine dispute of fact as to whether Plaintiffs are exempt under the commissioned employee exemption and summary judgment is not appropriate.

B.     Alleged Violations of the CWA

Defendants argue, among other things, that Plaintiffs were not entitled to overtime or vacation pay, were provided meal and rest periods as well as proper commission compensation under the CWA, and that Plaintiffs failed to make a proper wage demand under the CWA.  (D. 52, pp. 16, 21-22, 26, 29, 38).  Plaintiffs concede that they were each properly compensated for meal breaks and that Plaintiff Walker did not make a proper wage demand and is thus not entitled to penalties under the CWA.  (D. 63, p. 1).  This Court, therefore, finds that there is no genuine dispute of facts regarding whether the Plaintiffs were provided meal periods and whether Plaintiff

---

[4] This Court notes that the Plaintiffs demonstrated that there is a dispute regarding whether their commissions were more than fifty percent of their income.  (D. 63, pp. 11-12).

Walker made a proper wage demand, and recommends granting Defendants' motion for summary judgment regarding these issues.

### 1.   CWA Penalties

Defendants argue that High Mesa is entitled to summary judgment regarding penalties attributable to the Plaintiffs' overtime and rest period claims under the CWA because Plaintiffs failed to send a written demand to recover penalties on these claims pursuant to C.R.S. § 8-4-109(3)(a).   Furthermore, Plaintiff Walker conceded "she did not make a wage demand and is therefore not entitled to penalties under Colorado law" and would not contest summary judgment on this issue.  (D. 63, p. 1).

Under Colorado law, "[i]f an employer refuses to pay wages or compensation in accordance with subsection (1) of this section, the employee, his or her designated agent, or the division may send a written demand for the payment."  Colo. Rev. Stat. Ann. § 8-4-109(3)(a).  A written demand is defined as "any written demand for wages or compensation from or on behalf of an employee, including a notice of complaint, mailed or delivered to the employer's correct address."  Colo. Rev. Stat. Ann. § 8-4-101(15).  When payment of "an employee's earned, vested, and determinable wages or compensation" is not made by the employer within fourteen days of the demand for payment, the employer is liable to the employee for wages plus a penalty that is calculated on the amount of unpaid wages.  Colo. Rev. Stat. Ann. § 8-4-109(3)(b).

On April 13, 2017, counsel for Soucy, Latham, and Walker sent a written demand for unpaid commissions, noting that High Mesa deducted a "back charge against commissions," deducted twenty percent from the employee's overall commission as a penalty for failing to sell a subscription to DirecTV, and requested payment records from High Mesa for the previous two

years. (D. 52-8, pp. 53-56).  The demand letter did not list any monetary amounts.  (*Id.*).

Specifically, the letter stated:

> Accordingly, all unpaid commissions (whether due to back charges for cancellations or DirecTV penalties) are due and payable now. This letter is the above-referenced employees' demand for High Mesa to tender the just amount of wages and compensation due pursuant to the Colorado Wage Act, C.R.S. 8-4-101, et. seq. (the "Act"). Please note that this demand covers all compensation improperly deducted for the previous two years.

(D. 52-8, p. 54).

On May 10, 2017, counsel sent a second demand letter regarding Plaintiffs Soucy and Latham and requested accrued and unused vacation time, unpaid commissions from the sale of phones and accessories, chargeback deductions, allegedly inaccurate 401K deductions, and documentation about High Mesa's payroll practices and commissions.  (D. 52-8, pp. 57-61).  This demand letter did list monetary amounts for accrued and unused vacation time, unpaid commissions, chargebacks, and 401K contributions.  (*Id.*).  In the second letter, counsel noted that the scope of potential discovery in litigation could include issues such as:

> [. . .] the employment of Ms. Soucy and Ms. Latham, the calculation and payment of commissions, the calculation of deductions and penalties from employees' paychecks, wage/hour violations including the failure to recognize and pay overtime and provide breaks and meal times pursuant to Colorado law and the Federal Fair Labor Standards Act, violations of record keeping requirements, and related claims.

(D. 52-8, p. 60, n.1).

Defendants argue that counsel failed to "make any specific demand for compensation attributable to allegedly unpaid overtime or meal and rest periods" and therefore are entitled to summary judgment on the Plaintiffs' CWA claims for penalties attributable to these claims.  (D. 52, pp. 38-39).  The Plaintiffs have already conceded that they were properly compensated for meal breaks, thus this Court will not address this issue.  The only issue this Court must address is

whether Plaintiffs Soucy and Latham made a proper demand for compensation for unpaid overtime and missed rest periods.  (*See* R. 66, pp. 9-10).

The CWA imposes a penalty on an employer "who receives an employee's written demand for payment and fails to make payment within fourteen days, and it increases the penalty if the employer's failure to pay is willful."  *Evans v. Loveland Auto. Investments, Inc.*, 632 F. App'x 496, 498 (10th Cir. 2015).  In essence, the penalty is designed "to punish employers that wrongly fail to pay their employees' earned wages."  *Id*.  The CWA defines written demand to be "*any* written demand for wages or compensation from or on behalf of an employee, *including a notice of complaint*."  Colo. Rev. Stat. Ann. § 8-4-101(15) (emphasis added).

In *Damitio v. Sushi Zanmai Inc.*, No. 12-CV-2603-JLK, 2013 WL 136186, at *1 (D. Colo. Jan. 10, 2013), Plaintiff served Defendants via her complaint and included the following written demand: "Plaintiff hereby demands payment as contemplated by the [CWCA] in an amount sufficient to reimburse Plaintiff for all tip credits taken against her hourly wages.  Such payment can be made care of undersigned counsel."  *Id*.  The demand did not list any quantified amounts for payment.  Regardless, the court found that because the term "written demand" is not fully defined by the CWA, "nothing precludes a complaint from functioning as the 'written demand' mandated by the statute."  *Damitio*, No. 2013 WL 136186, at *1; *see also Fracasse v. Ablaze Energy*, No. 15-CV-2192-WJM-NYW, 2016 WL 8577551, at *4 (D. Colo. July 1, 2016).  The court concluded that a complaint that asked for "tip credits and ask[ed] that they be sent care of her counsel" was sufficient information to constitute a wage demand under the CWA.  *Damitio*, 2013 WL 136186, at *1.  Reading the demand letters and complaint together, Plaintiffs Soucy and Latham's requests can constitute a wage demand for compensation for unpaid overtime and missed rest periods under the CWA.  The Court finds that there is a genuine dispute of fact as to this issue

and summary judgment is not appropriate.  Conversely, the Court finds that there is no genuine dispute of fact regarding Plaintiff Walker's concession and, here, summary judgment is appropriate.

        2.   Vacation Compensation

Defendants argue that High Mesa is entitled to summary judgment regarding Plaintiffs' unpaid vacation claim.  Under Colorado law, the term "wages" or "compensation" is defined as:

> All amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculating the same or whether the labor or service is performed under contract, subcontract, partnership, subpartnership, station plan, or other agreement for the performance of labor or service if the labor or service to be paid for is performed personally by the person demanding payment. No amount is considered to be wages or compensation until such amount is earned, vested, and determinable, at which time such amount shall be payable to the employee pursuant to this article.

Colo. Rev. Stat. Ann. § 8-4-101(14)(a)(I).  Moreover, "[i]f an employer provides paid vacation for an employee, the employer shall pay upon separation from employment all vacation pay earned and determinable in accordance with the terms of any agreement between the employer and the employee."  Colo. Rev. Stat. Ann. § 8-4-101(14)(a)(III).

Defendants argue that Plaintiffs did not have any vacation time that was earned, vested, and determinable at the end of their employment because there was no agreement between the parties that vacation would be paid out after termination or resignation.  (D. 52, pp. 21-26). Plaintiffs concede that they were never told whether they would have vacation paid out upon termination or resignation.  (D. 63, pp. 7-8).  Plaintiffs argue that because the Defendants provided paid vacation for each Plaintiff and the vacation was earned by completing the prior year of employment, that it is determinable at two-weeks per year, minus any vacation that was taken, and could not be forfeited.  (*Id.*, p. 21).  However, an agreement to provide vacation does not equate to an agreement to pay out vacation upon termination.  "Silence does not by itself necessarily

create ambiguity as a matter of law. Silence does create ambiguity, however, when it involves a matter naturally within the scope of the contract." *Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 715 (Colo. 1993).  In *Thompson*, the Colorado Supreme Court held that the employee's contract was ambiguous on the issue of compensation for unused vacation time when the employee's contract expired.  The Colorado Supreme Court directed the Colorado Court of Appeals to examine parole evidence to determine the intent of the parties.  *Id*. at 716.  The state supreme court determined that the contract was ambiguous because the contract did address the issue of whether the employee would be compensated for unused vacation time when the employee was terminated without cause, but failed to address, in this specific circumstance, vacation compensation when the contract expired.  *Id*.

Unlike *Thompson*, here, the record indicates that the Defendants did not have an agreement with Plaintiffs to compensate employees for vacation after termination or resignation.  (*See* D. 63-1, pp. 36-37).  Plaintiffs also concede that the Defendants did not notify them as to whether vacation would be paid out upon resignation or termination.  (D. 63, p. 7).  Indeed, during deposition, the Defendants noted that prior to distributing this handbook, they did not inform the Plaintiffs of High Mesa's vacation payout policy.  (D. 63-7, pp. 14-16).  Robert testified during deposition that:

> Q. How were High Mesa policies and procedures communicated to employees, if they were, if there wasn't an employee handbook prior to Exhibit 2?
> [. . . ]
> A. How were they communicated, the policies?
> Q. That's right.
> A. Just verbally to the individual.  They weren't as extensive.
> [. . .}
> Q. So how was an employee to know High Mesa Communication's policy on vacation time before the employee handbook?
> A. We told them after a year two weeks vacation.
> Q. And that is the language you used two weeks vacation?
> A. Yes.

Q. You didn't use any other phrase?

A. No.

Q. Did you talk to employees whether vacation time would be paid after termination?

A. No.

Q. So there was no guidance one way or another that you communicated?

A. No monetary value.

Q. Okay. so that is a phrase that you have introduced to the conversation. When did you tell folks that there was no monetary value of vacation time?

A. It was never implied, never asked about it.

Q. Did you ever actually use those words?

A. No.

(*Id.*).   Indeed, David confirmed that same:

Q. Well, you previously testified that this employee handbook was a codification of pre-existing policy; correct?

A. Yes.

Q. But you've also just testified the time off and paid time off at termination was not discussed with any of the employees; correct?

A. Correct.

Q. So how were the employees supposed to know that time off was not paid out at termination if you or Greg didn't communicate it?

A. Because we had no instance to ever discuss that with them.

Q. So how would they know, though?

A. They wouldn't have known.

Q. So this was a new policy then with respect to the time off not paid out at termination?

A. No, it's not a new policy, because it was how High Mesa Communications had been handling this instance with other employees that were terminated.

[. . .]

Q. So this was High Mesa's intention all along, not to pay out a vacation period or paid time off at termination?

A. That was our policy.

Q. And my clients would have no way of knowing that policy?

[. . .]

A. Because they didn't ask, no, they wouldn't.

Q. And is it your understanding that an employee is the one that's supposed to be in charge of making sure they understand every single policy of a company?

A. No.

(D. 63-8, pp. 19-20).   Once the moving party has met its burden for summary judgment, the responding party must "present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th

Cir. 1991).  The nonmoving party "'may not rest upon the mere allegations or denials of his pleadings' to avoid summary judgment."  *Id.* (quoting *Anderson*, 477 U.S. at 248).  Here, the Plaintiffs have not provided evidence demonstrating that there was an agreement between the parties for High Mesa to pay employees for vacation upon termination or resignation.  The Court finds that there is no genuine dispute of fact as to this issue and summary judgment is appropriate.

### 3.  Commission Compensation

Defendants argue that High Mesa is entitled to summary judgment regarding Plaintiffs' claim regarding compensation for chargebacks.  Under Colorado law, employers "shall [not] make a deduction from the wages or compensation of an employee" except as specifically enumerated under Colorado Revised Statue Annotated § 8-4-105.  Moreover, employees can be paid for "[b]onuses or commissions earned for labor or services performed in accordance with the terms of any agreement between an employer and employee."  Colo. Rev. Stat. Ann. § 8-4-101(14)(a)(II).

Here, the record is silent as to whether the parties had an agreement regarding chargebacks. Defendants argue that Plaintiff Soucy was aware of and helped them perform chargebacks, and therefore, such compliance equates to implicit acceptance of High Mesa's practice.  (D. 52, pp. 28-29).  During deposition, Plaintiff Soucy noted that she was the only employee who knew of and assisted with the 180-day chargebacks but felt that the policy was not in compliance with AT&T's chargeback policy.  (D. 63-3. pp. 8-10, 18-19, 37-38).  Plaintiff Soucy noted that she was instructed by Robert not to tell the other employees about the deductions but disobeyed his instruction.  (D. 63-3, p. 10).  Plaintiff Latham learned of the chargeback policy in April 2016 and believed chargebacks were calculated up to fourteen days after a sale.  (D. 63-5, pp. 15-16). Plaintiff Walker stated that she was unaware of the period of time for calculating a chargeback. (D. 63-1, p. 63).

The record indicates that the Defendants did not have a written policy regarding chargebacks until either late 2016 or 2017. (*See* D. 63-1, pp. 34-35). Plaintiffs argue that the policy was distributed in 2017. (*See id.*). And while the handbook does disclose the policy regarding a 180-day vesting period, the record is silent as to whether there was an agreement between the parties and whether High Mesa's published policy was applicable to Plaintiffs Soucy and Latham, who left High Mesa before the handbook was distributed, or applicable to Plaintiff Walker's commissions earned prior to the publication of this policy. (*See* D. 63-9, pp. 9-10). Thus, taking the evidence in light most favorable to the Plaintiffs, the Court finds that there is a genuine dispute of fact and, thus, summary judgment is not appropriate.

4. Rest Periods

Finally, Defendants argue that High Mesa is entitled to summary judgment regarding Plaintiffs' claim that High Mesa violated the CWA by not providing rest periods. Defendants argue that Plaintiffs received their rest periods and that Plaintiffs suffered no damages as they were compensated for all time worked. (D. 52, p. 19). Under the Colorado Minimum Wage Order:

> Every employer shall authorize and permit rest periods, which, insofar as practicable, shall be in the middle of each four (4) hour work period. A compensated ten (10) minute rest period for each four (4) hours or major fractions thereof shall be permitted for all employees. Such rest periods shall not be deducted from the employee's wages. It is not necessary that the employee leave the premises for said rest period.

7 Colo. Code Regs. § 1103-1:8. High Mesa does not dispute that its operations are encompassed by the Colorado Minimum Wage Order. (D. 52, p. 16). According to Defendants, each Plaintiff had "downtime" during the workday for which they were compensated, including the use of social media and other electronic communications with family, making calls and sending texts during the workday, receiving personal deliveries, and taking smoke breaks. (D. 52, pp. 20-21).

Plaintiff Walker claims that she generally did not take rest breaks.  (D. 63-2, p. 9). Regarding smoke breaks, Plaintiff Walker claims to have engaged in those while taking out the trash, checking the mail, or talking with customers outside the store.  (D. 63-1, pp. 6-7).  Plaintiff Soucy claims that she generally did not take her rest breaks and had to work through those breaks. (D. 63-4, p. 10; 63-3, p. 38).  Plaintiff Latham claims that she did not take her rest breaks and that the store was often understaffed, precluding her from taking those breaks.  (D. 63-6, pp. 9-10). Plaintiff Latham claims that she was frequently not provided a rest period.  (D. 63-5, p. 49).

Plaintiffs can seek compensation for missed rest breaks under the theory that, when an employee is not provided a rest break, their workday is extended by the amount of time missed or shorted.  *See Lozoya v. AllPhase Landscape Construction, Inc.*, No. 12-CV-1048-JLK, 2015 WL 1757080 *2 (D. Colo. 2015) (accepting the premise that missed rest periods can constitute "wages or compensation.").  Here, viewing the evidence in the light most favorable to Plaintiffs, the Court finds that a genuine factual dispute exists as to whether rest periods were provided to Plaintiffs. Because that factual dispute exists, this matter is not appropriate for summary judgment.

V.      CONCLUSION

Accordingly, this Court RECOMMENDS that the Defendants' Motion for Summary Judgment (D. 52) be GRANTED IN PART AND DENIED IN PART.

This Court finds that there is no genuine dispute of facts for the following issues and RECOMMENDS GRANTING the Defendants' Motion for Summary Judgment (D. 52): (1) Plaintiffs were provided meal periods in compliance with the CWA, (2) Plaintiff Walker failed to make a proper wage demand under the CWA, and (3) Plaintiffs did not have any vacation time that was earned, vested, and determinable at the end of employment under the CWA. The Court RECOMMENDS DENYING the remainder of Defendants' Motion for Summary Judgment.

Dated at Grand Junction, Colorado this January 13, 2020.

_____

Gordon P. Gallagher

United States Magistrate Judge